IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBIN MOORE,                                              CIVIL DIVISION

      Plaintiff,                                       Case No.   2:21-cv-184

      v.

MONARCH MEADOW, LLC,

      Defendant.

## COMPLAINT AND JURY DEMAND

A.    ***Preliminary Statement***

1.    The plaintiff Robin Moore brings this action under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.,* to redress violations of her right to be free from employment discrimination and retaliation based upon her age.  Because of the violations described herein, this Court is also empowered to exercise pendant jurisdiction pursuant to the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.*  A jury trial is demanded.

B.    ***Jurisdiction***

2.    The jurisdiction of this Court is invoked pursuant to 29 U.S.C. § 626(c)(1), 28 U.S.C. § 1331 and under the doctrine of pendant jurisdiction.

3.    On or about December 12, 2020, the plaintiff filed a timely charge alleging discrimination with the Equal Employment Opportunity Commission ("EEOC"), docketed at 533-2021-00491.  This charge was simultaneously cross-filed with the Pennsylvania Human Relations Commission.

4.    The EEOC issued a Notice of Right to Sue on January 27, 2021.

5.    This complaint is filed within 90 days of receipt by the plaintiff of the Notice of Right to Sue.

C.      *The parties*

6.      The plaintiff Robin Moore is an adult individual who resides at 160 Elizabeth Street, Hopwood, PA 15445 (Fayette County).

7.      The defendant Monarch Meadow, LLC ("Monarch" or "the company") an entity doing business in the Commonwealth of Pennsylvania, and, specifically, in this district.  The defendant maintains a place of business at 490 Coolspring Street, Uniontown, PA 15401 (Fayette County).

8.      Monarch is a residential personal care facility for senior citizens and hospice patients.

9.      At all times material, the defendant employed more than twenty employees.

10.     The defendant was the plaintiff's employer and is an employer within the meaning of the ADEA, 29 U.S.C. § 630(b).

D.      ***Factual Background***

11.     The plaintiff was employed by Monarch from October 20, 2020 through December 2, 2020, at which time her employment was terminated.

12.     The plaintiff's position was Receptionist/Documentarian.  As a receptionist, her duties included answering telephones, typing, helping nurses and administering Covid-19 testing at the door.  As documentarian, her duties included taking photos at events of the employees and residents and taking photographs for personnel identification badges.

13.     The plaintiff performed all of the functions of her job in a competent fashion, was a good worker and was well liked by the staff, management and residents.

14.     The plaintiff was 59 years old during the time she worked for Monarch.

15.     Mandi Simmons, Operations and Activities Director, was the plaintiff's supervisor.  Simmons is younger than the plaintiff; she is in her 30s.

16.     From the outset of the plaintiff's employment, Simmons treated her in a condescending and demeaning way, often saying things like "I don't need your kind of help" when the plaintiff offered to assist her with tasks or work.  At first, the plaintiff did not understand why Simmons acted so dismissively towards her, but she started to notice, over time, that Simmons did not treat younger employees in the same way.  Eventually, the plaintiff came to realize that Simmons had a problem with her because of her age.

17.     On November 5, 2020, Simmons came out of her office and approached the plaintiff.  She asked the plaintiff whether she was aware of Monarch's flow chart.  The flow chart is posted on a bulletin board outside of Simmons' door and is an organization chart identifying certain employees and their positions.

18.     The plaintiff told Simmons that she was, in fact, aware of the flow chart. Simmons said, "well, come here a second".  The plaintiff walked over to Simmons and the bulletin board.  Simmons pointed to the chart and said, "You are aware that I am your boss". The plaintiff readily acknowledged that fact, but Simmons apparently had a point she wanted to make and said the following:  "I wanted to make sure you knew that I am your boss, but, because you are a senior citizen, I respect you.  Just like when I worked the election on Tuesday in the capacity of Judge of Election in North Union Township with three senior citizens all in their 80's. They understood I was the boss but I respected them because they are senior citizens".

19.     The plaintiff was shocked by that statement and was deeply offended and hurt by being called a "senior citizen" by her younger manager and being compared to individuals who

are in their 80s.  Further, such a statement did not communicate any level of "respect"; to the contrary, it seemed very disrespectful, intentionally demeaning and humiliating.

20.    On November 20, 2020, the Monarch had a "virtual" meeting that the plaintiff and other employees attended.  Daniel Vivian, Administrator and co-owner of Monarch, conducted the meeting.  He discussed new policies in light of the pandemic, including new restrictions and protocols for people coming into the building.  He then talked about the new discrimination policy that the company was implementing.  Daniel Vivian said, "We now have a discrimination policy in writing" (the plaintiff had been the one who typed it up a couple of days prior).  Daniel Vivian explained the general outlines of the discrimination policy and finished by saying, "if you feel that you have been discriminated against, come to me or Katie [Vivian] about it."  Katie Vivian is Daniel Vivian's wife and is a co-owner of Monarch.

21.    On November 28, 2020, Laurie Hall, cook, was talking to the plaintiff about problems she was having with Simmons regarding food preparation.  She asked the plaintiff if she was experiencing any problems with Simmons.  The plaintiff told Hall about the uncomfortable encounter with Simmons on November 5.  Hall encouraged the plaintiff to tell Daniel or Katie Vivian about the incident.  Hall said, "if you don't do it, I or someone else will".

22.    Hall told Amanda McGregor, Second Shift Supervisor, about their conversation. Gregor contacted the plaintiff later in the day and during their conversation, McGregor brought up the plaintiff's encounter with Simmons.  She told the plaintiff "not to be mad" about Hall telling her about it.  McGregor said, "I hope you're not going to sit on this".

23.    Although Simmons' comments to her on November 5 had deeply offended her, the plaintiff had not thought about bringing the matter to the attention of management.  After talking with Hall and McGregor, the plaintiff was experiencing stress and anxiety about the

situation.  She talked to her husband, Gary Moore, about her problem.  He encouraged her to talk to either Daniel or Katie Vivian.  He reminded her about the discrimination policy and Daniel Vivian's instruction to come to Katie or him about discrimination in the workplace.  He also told the plaintiff, "You don't want them to hear about this from somebody else."   She decided that it might be best to talk to Katie Vivian about the problem and to get guidance or help.

24.     On the morning of December 1, 2020, none of the cooks showed up for work and Simmons had to prepare breakfast herself.  The plaintiff approached Simmons asking if she could help her, offering to do anything that Simmons needed, like setting up the tables or anything else.  Simmons seemed frustrated with the plaintiff's offer to assist her and barked, "just stay out of my way!"

25.     Katie Vivian was at the facility that day to do Covid-19 testing.  Around 11:30 a.m., the plaintiff asked if she could meet with her a little later when she had time and that she wanted to meet in private.  Katie Vivian said, "sure".

26.     Around 1:15 p.m., the plaintiff went to Katie Vivian's office to see if she was available to talk.  Katie Vivian indicated that this was a good time.  Daniel Vivian was also in the office, sitting at another desk and seemed to be doing other work.  The plaintiff told Katie Vivian that, after the virtual meeting early in November, something was bothering her and that she was an emotional wreck and wanted to talk about it.  Katie Vivian encouraged the plaintiff to come in, sit down and talk to her about it.  The plaintiff did so, shutting the door behind her.

27.     The plaintiff told Katie Vivian about her encounter with Simmons on November 5. She related the entire conversation with Simmons to Katie Vivian, including that Simmons wanted to make sure the plaintiff knew that she is her boss, but, because the plaintiff is a "senior citizen", Simmons respected her.  She also told Katie Vivian that Simmons told her that she

5

worked the election in the capacity of Judge of Election in North Union Township with three senior citizens all in their 80's and that they understood Simmons was the boss but that she respected them because they are senior citizens.

28.     Daniel Vivian suddenly blurted out, "Great, now we're going to be fucking sued!" The plaintiff was surprised by his reaction and wasn't sure if he directed that statement to her (her back was to him at the time).  She said to Katie Vivian, "You told me to make you aware of any discrimination in the workplace, so I am.  I'm doing what you said."

29.     Katie Vivian told the plaintiff that she would talk to Simmons about it.  She said, "I'm not defending her, but sometime she comes off wrong, but I do believe deep down she has a good heart."  The plaintiff responded, "that may be, but I wonder if she walked anyone else up to the bulletin board and brought up their age."

30.     The plaintiff also said that she wanted to tell Katie Vivian herself because other people "on the other side of this door" knew about this and that they were threatening to tell Katie or Daniel Vivian.  The plaintiff told Katie Vivian that she wanted to do it herself, so that it came from her and not someone else.

31.     The plaintiff expressed her feeling that Simmons does not like her.  "I keep offering to help her, but she won't let me."  Katie Vivian acknowledged that she had told Simmons several times to let the plaintiff assist her.  The plaintiff responded, "Well, she never does.  She treats me like she doesn't want me here."

32.     Katie Vivian again promised to talk to Simmons about the situation.  Daniel Vivian walked over to the plaintiff with the discrimination policy in his hand.  He signed it and gave it to her and mumbled that he had to give the signed policy to her.  He seemed irritated with the plaintiff, which prompted her to say, "Look, you told us during the virtual meeting to make

6

you aware of discrimination.  I am here doing that.  I am not sleeping well because I knew that I

had to come here and tell you and that she [Simmons] is here, and I just fill ill about the entire

thing."  Katie Vivian said that she would talk to Simmons.

33.     At this point, the plaintiff's shift had ended so she punched out.  As she was

leaving the building, she saw Daniel Vivian and Katie Vivian walking with Simmons to another

part of the building.

34.     The next day, December 2, 2020, the plaintiff finished taking photos of the

residents for their Christmas family cards and was punching out when Daniel Vivian called her

to the office and told her to close the door.

35.     Daniel Vivian started off by saying, "I am the boss here, not Katie.  I own the

majority of the company and I am the administrator.  You speak to me, not Katie.  I launched my

own investigation and there are no findings to your claim.  We talked to Mandi [Simmons] and

she said that she didn't say it."  The plaintiff was surprised by the anger in his voice and his

intimidating tone, but said, "If she didn't say it, how would I have known the stuff about her

being on the election bureau?"  He said, "well, she said she said it but you took it out of context."

The plaintiff responded, "Wait, you just said that she said she didn't say it and now you're

saying that she did!  I am not understanding and becoming very confused."

36.     Daniel Vivian ignored the plaintiff's point and went on the attack:  "You said that

other employees 'outside this door' knew about this.  I spoke to all of them.  You must have been

spreading a rumor or something.  From my investigation, others did hear it, but they heard it as a

rumor you decided to start."  The plaintiff sat there, shocked and at a loss for words.  She started

to cry.  She said, "Are you saying I did this to myself?"

37.      Daniel Vivian said, "It's just your word against hers and so there is no proof, just like anything I say here now.  NO PROOF!  Your word against mine, Robin!"  He looked at the plaintiff intently and said, "Maybe in your next job you won't feel discriminated against."  He paused and stared at her.  Based on the anger and hostility, the plaintiff understood that he was firing her.  She said, "I'm really uncomfortable with what you are saying to me and how you are saying it.  I guess I will give my resignation."  Daniel Vivian continued to glare at the plaintiff, and said, "Yeah, that's for the best".  His voice was dripping with sarcasm.  He then said, "If you got a problem with this, call the EEOC or someone else."

38.      At this point, he got out of his chair and stood directly over the plaintiff, who was still seated.  In a menacing voice, he said, "What were your expectations of all of this? Did you think I would fire her? You had to have wanted an outcome. Only people wanting something done report things like this. In fact, you are a secretary here and that is all you ever will be. Same pay, same title. I don't care what else you want to do. See, if I give you extra work, I'm gonna need to pay you and I ain't doing that. You perceive things one way and I another.  No one heard the conversation, so it didn't happen.  That is the way the law works. NO PROOF! It didn't happen. I have cameras hooked up now and no one is off talking."

39.      The plaintiff said, "Huh?  I don't understand that that means" [referring to the part of Daniel Vivian's diatribe that was referring to him hooking up cameras].  Again, Daniel Vivian ignored the plaintiff's question and, instead, said, "Yeah, and by the way, EVERYONE was asked and EVERYONE was walked to the board."  The plaintiff responded, "And told about their age?  I'm at a loss here; I'm at a total loss."

40.      The plaintiff stood up and again said, "I'm at a loss for words".  She then said, "How did me reporting something that offended me become you turning the table on me and

8

making me feel guilty, like I did something wrong?"  Daniel Vivian said, "Again, Robin, your perception not mine.  Like I said before, this investigation is over.  You do what you want."

41.     Daniel Vivian opened the door, escorted the plaintiff out and said in a loud voice for all to hear, "Now you have yourself a great day."

42.     The plaintiff was terminated from her position; it was not a voluntary resignation. Further, the plaintiff was terminated in retaliation for raising the issue of age discrimination to management.

## FIRST CAUSE OF ACTION

43.     The preceding paragraphs are incorporated herein by reference as if they were set forth at length.

44.     The defendant discriminated against the plaintiff and retaliated against her as described above because of her age, in violation of the ADEA, 29 U.S.C. § 623(a)(1).

45.     The defendant's violation of the ADEA was willful.

## SECOND CAUSE OF ACTION

46.     The preceding paragraphs are incorporated herein by reference as if they were set forth at length.

47.     The defendant discriminated against the plaintiff and retaliated against her as described above because of her age, in violation of the PHRA, 43 Pa. C.S. § 951 *et seq.*

WHEREFORE, the plaintiff respectfully requests judgment be entered in her favor and against the defendant and that the defendant be required to provide all appropriate remedies under the ADEA and the PHRA, including back pay, front pay, compensatory damages, and attorney's fees and costs.

Respectfully submitted,

*/s/ Michael J. Bruzzese*

Michael J. Bruzzese
Pa. ID No. 63306
2315 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219
412.281.8676
Counsel for the plaintiff

Dated:  February 8, 2021

10